UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| GLORIA GARNETT WORKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:16-261-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,* | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Gloria Workman and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 11, 13] Workman contends that the administrative law judge ("ALJ") assigned to her case erred by denying her claim for Supplemental Security Income ("SSI") benefits. [Record No. 11-1] However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 13] For the reasons discussed below, the Court concludes that remand for further proceedings is necessary.

**I.**

Workman filed an application for SSI under Title XVI of the Social Security Act ("the Act") on September 10, 2012. [Administrative Transcript, "Tr." 396] She alleged a disability

---

* Nancy A. Berryhill is the Acting Commissioner of Social Security and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

- 1 -

beginning in February 2011. [Tr. 41] The Social Security Administration ("SSA") denied her application initially and upon reconsideration. [Tr. 220-221] Workman pursued and exhausted her administrative remedies. Her case is now ripe for this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Workman was 50 years-old at the time of the ALJ's decision and had a GED. [Tr. 191] Although Workman had not been employed since February 2011, she worked previously as a cashier and cook at a Pizza Mart. [Tr. 179] Workman contends that she is unable to work due to a host of issues, including heart problems, high blood pressure, diabetes, migraines, fainting episodes, diverticulitis, GERD, depression, colitis, spina bifida, chronic back pain, and anemia. [Tr. 210] She claims her daily ability to function is affected by weakness, shortness of breath, blackouts, fainting, dizziness, migraines, and chest pain. [Tr. 424] At the supplemental hearing held on August 5, 2015, Workman testified that, since the December 2014 hearing, she has experienced more seizures. [179-80]

After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Workman had severe impairments of degenerative disk disease, seizures and obesity. [Tr. 43] However, he determined that Workman had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [C]an never climb ladders ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance, bend, stoop, kneel, crouch, and crawl. The claimant must avoid all exposures to hazards such as moving machinery and unprotected heights.

[Tr. 49]

After taking Workman's age, education, work experience, and RFC into consideration, the ALJ concluded that the claimant could perform a significant number of jobs in the national economy, such as laundry worker, night cleaner, routing clerk, office helper, retail order clerk, and inspector. [Tr. 58] As a result, he determined that Workman was not disabled from September 10, 2012, through the date of the decision. [*Id.*]

## II.

A "disability" is defined under the Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruise v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). In determining whether a claimant is "disabled" and entitled to supplemental income, she must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

If the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work under the fifth step of the analysis. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Workman claims that the ALJ erred in concluding that she does not suffer from severe mental impairments and contends that the ALJ failed to assign weight to the opinion of a state agency non-examiner. Additionally, she contends the ALJ improperly weighed the opinions of medical sources. [Record No. 11-1, pp. 10, 12]

#### A. Mental Impairments

Workman argues that the ALJ erred by failing to classify her mental impairments as "severe." *See* 42 U.S.C § 423(d)(2)(A). It is the claimant's burden to prove the severity of

her impairments at the second step of the sequential evaluation process. *See Her*, 2013 F.3d at 391. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a), (b). The Sixth Circuit has held that "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The mere diagnosis of a condition does not thereby establish its severity. *Id.* at 863.[1]

The ALJ found that Workman suffered from several severe impairments at step-two of the analysis. [Tr. 43] However, he did not evaluate the effect of Workman's mental impairments in his RFC determination. Although the ALJ indicates that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in determining Workman's RFC, such boilerplate language is insufficient evidence that he considered the mental impairments in the RFC determination. *See Johnson v. Colvin*, No. 15-CV-039, 2016 WL 3257124, *3

---

[1] Once step-two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457; S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "The fact that some of [a claimant's] impairments were not deemed to be severe at step-two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457.

(E.D. KY. Jun. 13, 2016) (citing *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, *6 n.3 (E.D. Mich. Feb. 27, 2015)).[2]

The ALJ did not err in concluding that Workman's mental impairments were non-severe. He found that Workman's mental impairments were non-severe because, after considering the "broad areas of functioning set out in the disability regulations for evaluating mental disorders[,]" he determined Workman's mental impairments cause no more than mild limitations in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, and pace) and there were no extended episodes of decompensation. [Tr. 48] The ALJ noted that Workman had not required inpatient hospital treatment and was able to complete "daily hygiene activities as well as simple household chores only being limited by pain." [*Id.*] He further noted that Workman stated she could concentrate well enough to read for one to two hours a day, watch television three to four hours a day, participate in religious meetings twice a week, discuss the Bible with others, and respond to emails. He also highlighted that Dr. Edwards found Workman able to work simple job tasks eight hours a day, five days a week without significant psychiatric symptoms. [*Id.*]

Workman argues that the ALJ failed to assign weight to state agency non-examiner Dr. Laura Cutler's opinions when he determined that Workman's mental impairments were non-severe. [Record No. 11-1, p. 10] However, the ALJ stated in his decision that he did take into consideration and gave great weight to the opinions of the "experts who prepared the State

---

[2] Because the ALJ failed to consider Workman's mental impairments in the RFC finding, any potential error in classifying her impairments as non-severe may be reversible. *See id.* at *3; *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *Fisk v. Astrue*, 253 F. App'x 580, 583–84 (6th Cir. 2007). Therefore, the court will analyze the ALJ's severity determination of Workman's mental impairments.

Agency (DDS) reports." [Tr. 57] While Dr. Cutler was not mentioned by name, she was one of the experts who prepared the DDS reports, more specifically she was involved in preparing the DDS reconsideration report. [Tr. 222-34] Dr. Cutler found that Workman's mental limitations caused no more than mild limitation in daily living and social functioning, and moderate limitations in maintaining concentration, persistence, or pace. [Tr. 227]. She also determined that Workman's mental impairments caused sustained concentration and persistence limitations, because her abilities to carry out detailed instructions and maintain attention and concentration for extended periods were moderately limited. [Tr. 230-31] Dr. Cutler concluded that Workman is able to: (i) understand, remember, and carry out simple one and two step instructions; (ii) sustain attention for extended periods of two hour segments for simple tasks; (iii) tolerate co-workers and supervisors; and (iv) adapt to routine changes as needed within the above parameters. [Tr. 231-32] Dr. Cutler's opinions support the ALJ's finding that Workman's mental impairments were non-severe because they did not significantly limit her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.922 (a), (b). Because substantial evidence supports the ALJ's findings that Workman's mental impairments were non-severe, he did not err regarding this issue.

    **B.    RFC**

RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 416.946(c). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc.*

*Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

### 1. Mental Impairment

Although the non-severe determination of the claimant's mental impairment was not in error, the ALJ was still required to consider the limiting effects of all impairments, including limitations resulting from non-severe impairments, when determining Workman's RFC. *See White v. Comm'r of Soc. Sec.*, 312 Fed. App'x. 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."). [T]o the extent an ALJ determines that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'" *Katona*, 2015 WL 871617, at *6 (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)).

In *Katona*, the district court reversed and remanded an adverse determination of the agency where the ALJ failed to discuss the claimant's mental impairments in the step-four RFC finding, even though the ALJ thoroughly discussed them in the step-two severity determination. 2015 WL 871617, at *6-7. The court reasoned that the analysis at step-two did "not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations." *Id*. at *7.

Likewise, in *Patterson v. Colvin*, although the ALJ distinguished the analyses at steps two and four, the district court reversed and remanded the matter because the ALJ failed to

discuss the non-severe mental impairments in formulating the RFC. No. 5: 14-cv-1470, 2015 WL 5560121, *5 (N.D. Ohio. Sept. 21, 2015). The court reasoned that it was, "at best, unclear whether the ALJ considered the cumulative effect of plaintiff's non-severe mental impairments when formulating the RFC." *Id.* at *4.

Both *Katona* and *Patterson* addressed the substantial evidence standard, concluding that an "ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error" even when supported by substantial evidence. *Katona*, 2015 WL 871617, at *7; *see also Patterson*, 2015 WL 5560121, at *2 ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (quoting *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)) (internal quotation marks and citation omitted).

While the ALJ discussed Workman's mental impairments thoroughly in determining the severity at step-two, he failed to mention them in his step-four RFC determination. The language indicating that he "considered all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence and other evidence" is merely boilerplate and does not demonstrate he truly considered the mental impairments in his RFC determination. *See Katona*, 2015 WL 871617, at *6 n.3 (discussing exact language). [Tr. 49.] Because there is no discussion of whether Workman's non-severe mental impairments contributed to her inability to perform substantial gainful work, remand on this issue is necessary.

## 2. Physical Health

Workman also asserts that the ALJ failed to properly evaluate her physical limitations in his RFC determination. In particular, she claims that the ALJ erred by improperly weighing the opinions of non-examining physician Dr. Puestow, examining physician Dr. Gale-Dyer, and treating physician Dr. Workman. [Record No. 11-1, pp. 12-15]

### a) Dr. Puestow

Workman asserts that the ALJ improperly accorded great weight to the opinion of non-examining physician Dr. Puestow. She argues that Dr. Puestow's opinion was not based on substantial evidence because he "offered no supporting explanations, medical signs, or laboratory findings to support his opinions." [Record No. 11-1, p. 14] Further, Workman claims because Dr. Puestow did not reference any medical records, it is completely unclear as to what records or exhibits he considered. [Record No. 11-1, p. 12-14] Under S.S.R. 96-6p, opinions of non-examining physicians may be entitled to greater weight than the opinions of treating or examining sources. 1996 WL 374180, at *3 (July 2, 1996). The ALJ must consider the relevant factors in 20 C.F.R. § 416.927(c)(2)–(6). There is "no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011).

Workman argues that the ALJ should have given less weight to Dr. Puestow's opinion because he did not offer any supporting explanations or reference any medical records. [Record No. 11-1, pp. 12-14] Dr. Puestow's lack of explanation or reference to medical records in the interrogatory, while relevant, is not conclusive. *See* S.S.R. 96-6p, 1996 WL 374180. The ALJ gave greater weight to Dr. Puestow's opinion due to the consistency with

the objective evidence of record in accordance with 20 C.F.R. § 416.927(c)(4). [Tr. 56] Workman fails to explain how Dr. Puestow's opinion is inconsistent with the objective medical evidence the ALJ considered when making his finding. Considering all of the medical opinions (other than Dr. Workman's which the ALJ properly discussed and discounted) and objective medical evidence, Dr. Puestow's opinion was consistent.

Additionally, it is clear from the record that Workman's exhibit file was proffered to Dr. Puestow. Not only does the ALJ state the fact in his decision [Tr. 45], but Dr. Puestow indicated that there was sufficient objective medical and other evidence to allow him to form opinions about the nature and severity of Workman's impairments when he completed the interrogatories. [Tr. 1235] There are no indications that Dr. Puestow was unaware of any major medical problems Workman was claiming. In fact, Dr. Puestow was sufficiently informed to cite Workman's numerous medical diagnoses. [*Id.*]

### b) Dr. Gale-Dyer

Turning to Dr. Gale-Dyer's opinion, Workman contends that it was inconsistent with Dr. Puestow's, and alleges the ALJ improperly discounted the opinion. [Record No. 11-1, p. 15] The ALJ discussed Dr. Gale-Dyer's opinion and found that he failed to rely on his own objective finding from his examination of Workman. [Tr. 56] For example, Dr. Gale-Dyer concluded Workman needed a cane to ambulate, while at the same time recording that Workman's gait was normal and was "able to ambulate without the use of an assistive device." [TR. 1209, 1212] He further concluded Workman would have limitation using her hands, however, during his examination he recorded that she could make tight fists and had a 5/5 grip strength in both hands. [Tr. 1209, 1213] Additionally, he found that Workman would never

be able to balance, even though during his examination he recorded that she could walk on her toes and heels and perform a tandem walk. [Tr. 1209, 1214] Dr. Gale-Dyer's opinion also failed to reference or cite to any medical findings when concluding Workman's ability to do work related activities. Indeed, if he had referenced his own medical findings, he would have found that his opinions were inconsistent with the objective medical evidence he observed during his examination.

### c) Dr. Marc Workman

It appears that *claimant* Workman attempts to argue that the ALJ improperly weighed the opinion of *treating physician* Workman. [Record No. 11-1, p. 15] Generally, the ALJ gives a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. However, when a treating physician offers an opinion on an issue reserved to the Commissioner, "the ALJ need not accord the opinion controlling weight." *Kidd v. Comm'r of Soc. Sec.*, No. 6: 08-110, 2008, U.S. App. LEXIS 13675, at *11 (6th Cir. June 25, 2008).

The ALJ determines the appropriate weight to give to a treating physician's medical opinion by considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)–(6). Additionally, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc.*

*Sec.*, 572 F.3d 272, 286 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is not 'inconsistent' with the other substantial evidence in the case record." S.S.R. 96-2p, 1996 WL 374188, at *1 (July 2, 1996). The regulations also provide that a physician's opinion regarding whether a claimant is unable to work or disabled is given no "special significance." 20 C.F.R. § 404.1527(d)(1).

Pursuant to 20 C.F.R. § 416.927(c), the ALJ provided a thorough two and a half page discussion, explaining his decision not to give Dr. Workman's opinion controlling weight and his analysis of the six factors outlining the weight that would be given. [Tr. 53-56] The ALJ found that Dr. Workman's opinion was "not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and was inconsistent 'with the other substantial evidence in the evidence of record.'" [Tr. 53-54] In his six-factor analysis, ALJ Meade found that: (1) from September 2013 to June 2015, claimant visited Dr. Workman approximately once every two to three months; (2) Dr. Workman's treatment relationship consisted of routine physicals, prescription refills, and referrals for diagnostic testing; (3) Dr. Workman's opinion failed to cite any medical signs or laboratory findings to support his opinions; (4) Dr. Workman's opinions were inconsistent with the objective evidence of record; (5) Dr. Workman was not a specialist in any of the medical issues involved in his opinion; and (6) there was no evidence Dr. Workman was familiar with the Social Security disability program or with the medical evidence of record. [Tr. 54-56] The ALJ properly followed 20 C.F.R. § 416.927(c) in determining the appropriate weight to give Dr. Workman's opinion.

**IV.**

ALJ Meade did not err in his assessment of the severity of Workman's mental impairments. Likewise, he did he err in considering the opinions of treating, examining, and non-examining sources. However, the ALJ failed to consider Workman's mental impairments in his RFC determination. Therefore, a remand is necessary so that this analysis may be performed in the first instance at the administrative level. Accordingly, it is herby

**ORDERED** as follows:

1. Plaintiff Gloria Workman's motion for summary judgment [Record No. 11] is **GRANTED** to the extent she seeks a remand for further administrative proceedings. The motion for summary judgment is **DENIED** to the extent Plainitff Workman seeks an award of benefits.

2. Defendant Nancy A. Berryhill's motion for summary judgment [Record No. 13] is **DENIED**.

3. The decision of Administrative Law Judge Jerry Meade is **REMANDED** for further administrative proceedings consistent with this Memorandum Opinion and Order and pursuant to sentence four of 42 U.S.C. § 405(g).

This 5th day of September, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge